# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

TERESA IRENE SANDERS,  }
                       }
    Plaintiff,         }
                       }
v.                     }   Case No.:  6:15-cv-00449-JEO
                       }
CAROLYN W. COLVIN,     }
Commissioner of the    }
Social Security Administration,  }
                       }
    Defendant.         }

## MEMORANDUM OPINION

Plaintiff Teresa Irene Sanders brings this action pursuant to 28 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of the Social Security Administration denying her application for Disability Insurance Benefits and Supplemental Security Income.  (Doc. 1).[1]  The case has been assigned to the court per the general order of reference of this district.  Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed and that Sanders's request for a remand (doc. 13 at 14) is due to be denied.

---

[1] References herein to "Doc. ___" are to the record numbers assigned by the Clerk of the Court. Page references are to the electronic numbers at the top of the page assigned by the Clerk.

I.      **PROCEDURAL HISTORY**

On January 11, 2012, Sanders filed an application for Disability Insurance Benefits and Supplemental Security Income with the Social Security Administration. (R. 276-86).[2] The claims were initially denied on March 29, 2012. (R. 148, 224-26). Sanders filed a Request for Hearing with an Administrative Law Judge ("ALJ") on July 5, 2012. (R. 148, 231-2). On August 8, 2013, Administrative Law Judge Jerome L. Munford conducted a hearing which Sanders, her attorney, and a vocational expert ("VE") attended. (R. 168-189). The ALJ issued a decision denying Sanders's claim on November 7, 2013. (R. 148-64).

On January 9, 2014, Sanders requested the Appeals Council review the ALJ's decision. (R. 140-42). The Appeals Council denied Sanders's request for review on January 23, 2015. (R. 1-4). On that date, the ALJ's decision became the final decision of the Commissioner. Sanders then filed this action for judicial review under 42 U.S.C. § 405(g).

II.     **STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly tailored. The court must determine whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the proper legal

---

[2] References herein to "R.___" are to the administrative record found at document 8.

standards. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance." *Id.* It means the decision is supported by "relevant evidence a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Applying the foregoing standard, the court must defer to the ALJ's factual findings. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014) (citing *Winchel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). In contrast, the court reviews questions of law de novo. *See Cornelius*, 936 F.2d at 1145. Accordingly, no presumption of validity attaches to the ALJ's conclusions of law. *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). If the court finds the ALJ improperly applied the law, or failed to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the court must reverse the ALJ's decision. *See Cornelius*, 936 F.2d at 1145-46.

## III. STATUTORY FRAMEWORK

To qualify for disability benefits, a claimant must show she is disabled. Being disabled is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The plaintiff bears the burden of proving that she is disabled and is responsible for producing evidence in support of such a claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. § 404.1520(a). Specifically, the Commissioner must determine in sequence whether the claimant: "(1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light

of his residual functional capacity, age, education, and work experience." *Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014)[3] (citing 20 C.F.R. § 404.1520(a)(4)). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.' " *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*; *Evans*, 551 F. App'x at 524.

## IV.   FINDINGS OF THE ALJ

Sanders was 54 years old at the time of the decision by the ALJ. (R. 162). She completed the 6th grade and was able to communicate in English. (*Id.*) Sanders has held various jobs as a welder, sales associate, and childcare provider. (R. 204). The ALJ found that Sanders had not engaged in substantial gainful activity since March 1, 2010, the alleged onset date. (R. 151). Following a hearing, the ALJ determined Sanders had the following medically determinable

---

[3] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

"severe" impairments: learning disability, coronary artery disease (stable), osteopenia, hypertension, hyperlipidemia, depression, and generalized anxiety. (R. 151).

Moving to the next step, the ALJ found none of Sanders's severe impairments met or medically equaled the severity of the impairments included in the Listings. (R. 156). As a result, the ALJ found that Sanders had the residual functional capacity ("RFC") to perform medium work during the period from her onset date of disability through her date last insured. (R. 158).

## V. DISCUSSION

Sanders argues that the Appeals Council did not properly consider additional medical evidence from Dr. Alan D. Blotcky, Ph. D., and asks that the case be remanded for further proceedings before an ALJ. (Doc. 13 at 12, 14). Dr. Blotcky completed a consultative psychological evaluation report of Sanders on February 4, 2014, after the ALJ's decision on November 7, 2013. (R. 128-30). Dr. Blotcky found Sanders was suffering from "depressive disorder NOS" and "generalized anxiety disorder" and that she had an IQ of 66. (*Id.*) He also noted that "Sanders' intellectual abilities fall in the Mildly Retarded range. Her intellectual limitations are a lifelong problem." (*Id.* at 130). He concluded that her prognosis is "poor." (*Id.*)

The Appeals Council acknowledged receipt of all medical evidence from Sanders. (R. 2). It noted that the ALJ decided the case "through November 7, 2013." (*Id*.) As to the additional medical information, it concluded the "new information is about a later time." (*Id*.) The Appeals Council specifically viewed Dr. Blotcky's report as "new information" that "does not affect the decision about whether [Sanders] was disabled beginning on or before November 7, 2013." (*Id*.) Sanders argues that the ALJ has a duty to consider Dr. Blotcky's report as additional evidence. (Doc. 13 at 14). Sanders requests that the case be remanded for further proceedings before an ALJ. (*Id.*) The Commissioner contends that even if Sanders's IQ score were chronologically relevant, "the report does not undermine the substantial evidence supporting the ALJ's finding and decision that [Sanders] was not disabled." (Doc. 16 at 6). As explained in greater detail below, the Court finds that Dr. Blotcky's report is chronologically relevant; however, remand is not required because this evidence does not change the result that substantial evidence supports the ALJ's decision to deny benefits.

"To meet Listing 12.05 for [intellectual disability], 'a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22.' " *Perkins v. Comm'r of Soc. Sec.*, 553 F. App'x 870 (11th Cir. 2014)

(quoting *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)).[4]  "A claimant must meet these diagnostic criteria in addition to one of the four sets of criteria found in 12.05(A), (B), (C), or (D) in order to show that his impairments are severe enough to meet or equal Listing 12.05." *Id.* (citing 20 C.F.R. § 404, Subpart P, Appendix 1, § 12.00(A)).  Sanders argues that she meets Listing 12.05(C).  (Doc. 13 at 13).[5]

---

[4] The term "intellectual disability" replaced the term "mental retardation" on September 3, 2013. It does not affect the analysis of this matter. *See Change in Terminology*, *"Mental Retardation" to "Intellectual Disability*," 78 Fed. Reg. 46,499 (Aug. 1, 2013).

[5] The court in *Perkins* stated the following concerning Listing 12.05(C):

> Listing 12.05(C) is met when the claimant shows: (1) "a valid verbal, performance, or full scale IQ of 60 through 70"; and (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* at 12.05(C).  To meet the second requirement of Listing 12.05(C), a claimant must have one or more additional impairments that are "severe" in that they "significantly limit[ ] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00.  Thus, in deciding whether additional mental or physical impairments significantly affect a claimant's ability to perform basic work activities, the ALJ must consider the combined impact of the claimant's impairments. *Davis v. Shalala,* 985 F.2d 528, 532 (11th Cir. 1993).
>
> Listing 12.05(C) therefore requires a showing that the claimant meets the diagnostic criteria of Listing 12.05, including deficits in adaptive functioning; a qualifying IQ score; onset before age 22; and the requisite deficits in work-related functioning. 20 C.F.R. pt. 404, subpt. P, app. 1, 12.05; *see also Hodges v. Barnhart,* 276 F.3d 1265, 1268–69 (11th Cir. 2001) (stating an IQ score of 60 through 70 establishes a rebuttable presumption that impairment due to mental retardation was present before age 22 because IQ scores remain fairly constant throughout life).  A valid IQ score does not have to be conclusive of mental retardation where the IQ score is inconsistent with other record evidence regarding the claimant's daily living activities and behavior. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992); *see also* 20 C.F.R. § 416.925(d) (explaining an impairment "cannot meet the criteria of a listing based only on a diagnosis," as

Although Dr. Blotcky assigned Sanders a full scale IQ score of 66 three months after the ALJ's decision, this evidence is chronologically relevant "because [Dr. Blotcky's] report described [Sanders's] low cognitive abilities and low IQ, which are presumed 'to remain fairly constant throughout life.' " *McCants v. Comm'r of Soc. Sec.*, 605 F. App'x 788, 790 (11th Cir. 2015) (quoting *Hodges*, 276 F.3d at 1268); *see also Washington v. Comm'r of Soc. Sec.*, 806 F.3d 1317, 1322 (11th Cir. 2015). A claimant is presumed to have manifested deficits in adaptive functioning before age 22 if the claimant shows a "valid verbal, performance, or full scale IQ of 60 through 70." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(C). Therefore, because Dr. Blotcky's assessed full scale IQ score of 66 entitles Sanders to a presumption of disability, it is chronologically relevant. *See Grant v. Astrue,* 255 F. App'x 374, 375 (11th Cir. 2007) ("[T]here is a rebuttable presumption that a claimant manifested deficits in adaptive functioning before the age of 22 if the claimant established a valid IQ score between 60-70.") (citing *Hodges v. Barnhart*, 276 F.3d 1265 (11th Cir. 2001)).

Having determined that the evidence is chronologically relevant, the next

---

      a claimant must show a "medically determinable impairment[ ] that satisfies *all* of the criteria of the listing" (emphasis added)).  Once an ALJ accepts a claimant's IQ score as valid and finds that he meets or equals the other criteria of Listing 12.05, the ALJ may not consider the claimant's age, education, or work experience in making a disability determination.  *Lowery,* 979 F.2d at 837.

*Id*., 553 F. App'x at 872-73.

issue in this instance is whether it is material.  "New evidence is material if 'there is a reasonable possibility that [it] would change the administrative outcome.'" *Smith v. Colvin*, 2016 WL 3362011, *6  (N.D. Ala. Jun. 17, 2016) (citing *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987); *McCants*, 605 F. App'x at 789).  The court finds that under the circumstances, a remand is not warranted because Dr. Blotcky's report "does not change the conclusion that the denial of benefits [] was supported by substantial evidence." *McCants*, 605 F. App'x at 791.  "A valid IQ score need not be conclusive of [intellectual disability] where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992); *see Long v. Colvin*, 2014 WL 1338503, *11 (N.D. Ala. Mar. 31, 2014) ("Evidence of the claimant's IQ score, and thus his presumptive deficits in adaptive functioning, may be rebutted *if* the record evidence, including medical evidence, is inconsistent with his daily activities and behavior.") (citing *Popp v. Heckler*, 779 F.2d 1497, 1499-1500 (11th Cir. 1986)).  To the contrary, Sanders's score of 66 merely creates a rebuttable presumption that she manifested deficits in adaptive functioning before age 22.  *Hodges*, 276 F.3d at 1269.

There is substantial evidence in the record to support the conclusion that, despite Sanders's qualifying IQ score, she does not meet the listing for intellectual

disability. Sanders's daily activities and social functioning are inconsistent with the required deficits in adaptive functioning to meet Listing 12.05. For example, Sanders stated that she lives alone and is capable of completing chores around the house, caring for her dogs, and going outside every day. (R. 313, 316). Sanders reported that she needs no assistance with personal care and does not require reminders to care for her personal needs or take medication. (R. 315). Sanders prepares simple meals, drives a car, shops, and counts change. (R. 315-16). She also reported that she could pay attention for 30 minutes to an hour and finish what she started. (R. 318).

Regarding social and interpersonal skills, Sanders noted that she spends time with others a few days a week and attends church two to three times a week. (R. 317). Sanders reported that she spends time with her sisters, children, and grandchildren on a daily basis. (R. 445). While Gloria Roque, Ph.D. opined that Sanders was moderately limited in her ability to interact with the public, her ability to get along with coworkers, her ability to accept instructions and respond appropriately to criticism from supervisors, and her ability to adapt to changes in the work setting, the court does not find that to be enough to rebut the other substantial evidence.[6] (R. 202-03). Particularly, the court notes that Dr. Roque

---

[6]Dr. Roque accounted for Sanders's limitations in her report as follows:

found that Sanders had "adequate intellectual functioning," as "indicated by [her] past semi-skilled work which included being a lead worker and supervisor." (R. 199-200). Additionally, Dr. Roque stated that Sanders "could carry out simple verbal instructions and sustain attention to routine/familiar tasks for extended periods." (R. 203).

Importantly, Sanders's extensive work history demonstrates that she is capable of learning new skills and adjusting to various work environments. (R. 196, 219). Sanders began work as a welder when she was 19 years old. Sanders reports that she used technical knowledge and skills to perform this work, and she was a lead worker in one of her welding positions. (R. 329-31). The VE testified that Sanders's work as a welder was skilled work. (R. 183). In 2005 and 2006,

---

    A. Claimant could understand and remember simple verbal instructions but not detailed ones.

    B. Claimant could carry out simple verbal instructions and sustain attention to routine/familiar tasks for extended periods. Claimant would function best with her own work area/station without close proximity to others. Claimant could tolerate ordinary work pressures but should avoid: frequent contact with crowds, rapid changes, and multiple demands.

    C. Contact with the public should be nonintensive. Feedback should be supportive. Contact with a few familiar coworkers should be casual.

    D. Claimant could adapt to infrequent, well explained changes.

(R. 203). Premised on the totality of the evidence, the ALJ found that while being able to perform medium work, Sanders "should have repetitive, routine work tasks with minimal changes in job settings." (R. 158).

Sanders operated a day care from her home. (R. 174-75; 329, 332). Sanders also worked as a receptionist in February and March 2010. (R. 329). As a receptionist, Sanders made schedules, performed dictation, typed file papers, answered phones, and greeted customers. (R. 196). The VE testified that Sanders's work as a receptionist and day care worker was semiskilled work. (R. 183). Dr. Roque noted that Sanders's past relevant work demonstrated that she had adequate intellectual functioning as indicated by her past semi-skilled work. (R. 199-200).

In Sanders's face-to-face interview with a claims representative on January 18, 2012, no difficulties in reading, understanding, coherency, concentrating, or answering questions were noted. (R. 311-12). She also completed her disability report. (R. 302).

On February 22, 2012, Renee Myers, Ph.D., completed a Report of Psychological Evaluation in which she opined that Sanders "was casually neatly and well-groomed," "pleasant and cooperative," and had "no deficits in receptive or expressive language ability." (R. 445). Dr. Myers also found Sanders to be "a generally positive, self-sufficient person" who "would have difficulty functioning completely independently due to her learning disability and may need some assistance to manage her own finances." (R. 446). Of Sanders's mental status, Dr. Myers made the following observation:

> Ms. Sanders' performance was consistent with what would be expected given her lack of education and learning disabilities. [] Ms. Sanders' thought processes were intact, goal directed, with no tangential or circumstantial thinking. [] There was no evidence of a thought disorder or grossly irrational thinking patterns. [] Ms. Sanders demonstrates adequate judgment and insight into her problems.

(*Id.*) Based on her examination, Dr. Myers's opined that Sanders

> could not return to a labor job due to her medical problems but would have difficulty learning a different job because of her learning disability. She is able to interact with others appropriately in a work setting. Her ability to respond to supervision is adequate. Her ability to learn new tasks in the workplace is limited.

(*Id.*) In evaluating Dr. Myers' opinions, the ALJ noted that

> Dr. Myers assessed the claimant with a GAF score of 60, which is indicative of only moderate difficulty in social and occupational functioning. According to the function report, the claimant associated most of her limitations with physical conditions as opposed to mental conditions.

(R. 161). The ALJ then credited her opinions with "significant weight," noting that "[h]er opinions appear consistent with the psychological limitations included in the assessed residual functional capacity." (R. 162).

The court finds that the record contains substantial evidence that supports a conclusion that, despite Sanders's low IQ score, she does not demonstrate the requisite deficiencies in adaptive functioning to meet Listing 12.05(C). *See, e.g.*, *Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980

(11th Cir. 2013) (substantial evidence supported ALJ's conclusion that claimant did not demonstrate deficits in adaptive functioning where she worked part time at a nursery, drove herself to work, prepared simple meals, dressed and groomed herself, attended church regularly, and socialized with friends); *Perkins v. Comm'r of Soc. Sec.*, 553 F. App'x 870 (11th Cir. 2014) (despite the claimant's low IQ score, the ALJ properly considered the claimant's past work as a cook, activities of daily living, and other record evidence in finding that the claimant's deficits in adaptive functioning were not reflective of intellectual disability); *Harris v. Comm'r of Soc. Sec.*, 505 F. App'x 874 (11th Cir. 2013) (claimant's ability to hold several jobs, dress and bathe himself, care for his personal needs, communicate effectively, and do simple math provided substantial evidence for the ALJ's determination that the claimant did not have the necessary deficits in adaptive functioning to meet Listing 12.05(C)); *see also Outlaw v. Barnhart*, 197 F. App'x 825, 827 (11th Cir. 2006) (noting that "long work history in semi-skilled positions and daily activities were inconsistent with his adult IQ scores"). In sum, the court finds there is substantial evidence to support the ALJ's conclusion that Sanders was not disabled.

## VI.     CONCLUSION

For the foregoing reasons, the court finds the Commissioner's decision is due to be affirmed and Sanders's request for a remand is due to be denied. An order consistent with the findings expressed herein will be entered contemporaneously herewith.

**DONE**, this the 6th day of July, 2016.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge